IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEVEN P. ROBERTS,

     Plaintiff,

vs.                                                    No. CIV 98-1315 MV/LFG

WILLIAM J. HENDERSON,
Postmaster General, United States
Postal Service

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment, filed August 18, 1999 **[Doc. 27]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well-taken in part and not well-taken in part. As explained below, the motion will be **DENIED** on the Rehabilitation Act claim and **GRANTED** on the retaliation claim.

## BACKGROUND

Plaintiff Steven P. Roberts brings suit against his employer, Defendant William J. Henderson, Postmaster General of the United States Postal Services, alleging employment discrimination on the basis of disability in violation of the Rehabilitation Act and retaliation in violation of Title VII of the Civil Rights Act of 1964 , as amended by the Civil Rights Act of 1991.

For the purpose of resolving this motion, the Court finds that the following are the undisputed material facts:[1]

1.     Plaintiff has had seizures related to his epilepsy since his youth and disclosed this to the Postal Service when he was hired.

2.     In August 1996 Plaintiff was given job duties at the Eldorado Finance Unit which complied with his work restrictions.  The Eldorado Post Office had two units--the Finance Unit and the regular post office.

3.     In January 1997, Karen Anaya accepted a position as Acting Manager at the Eldorado Station where Plaintiff worked.  She had a meeting with Bob Dinkel, Manager of Customer Service Operations, and Eric Martinez, Albuquerque Postmaster.  Dinkel and Martinez instructed Anaya not to respect Plaintiff's medical restrictions, and to take action to fire Plaintiff is he refused to follow her instructions because of his restrictions.  Dinkel and Martinez blamed Plaintiff for problems at the Eldorado Station and stated that he was a non-productive employee.

4.     In April 1997, Plaintiff was transferred to the North Valley Carrier Annex ("NVCA").

5.     On July 7, 1997, Steve Snowden was detailed to the NVCA to serve as Acting Manager, and he became Plaintiff' supervisor.  Shortly after arriving at the NVCA, Snowden changed Plaintiff's start time from 6:00 a.m. to 9:00 a.m.

6.     On July 9, 1997, Plaintiff informed Snowden that he had medical restrictions, including that he needed to maintain a 6:00 a.m. to 8:00 a.m. starting time; that he needed to have two days off

---

[1]The Court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Mere assertions that a fact is or is not controverted are insufficient. *Id.*

in a row; that he could not drive during work hours; that he could not work with computers for prolonged periods of time; and that he could not work on ladders.

7.      Snowden informed Plaintiff that he needed a complete list of current restrictions by July 16, 1997 or Plaintiff would not be allowed to continue working at the NVCA.  Plaintiff told Snowden that he had provided USPS with his medical restrictions in the middle of June 1997, that he provided updates on his restrictions on a regular basis, and that the Postal Service maintained a file listing his restrictions.

8.      Snowden could not locate any records at the NVCA listing Plaintiff's restrictions, and he informed Plaintiff as much.  On July 14, 1997, Snowden sent a memorandum to several supervisory and occupational health staff requesting any written information reflecting Plaintiff's restrictions. That same day, Aislinn Matthews, an occupational nurse, informed Snowden that she found a list of restrictions for Plaintiff.  However, she could find no list supporting Plaintiff's contention that he needed to start work between 6:00 a.m. and 8:00 a.m. or that he needed to have two days off in a row.

9.      On July 16, 1997, Plaintiff saw Dr. Daniel Shibuya, his physician.  Dr. Shibuya prepared a letter to Snowden outlining Plaintiff's restrictions which Plaintiff delivered to Snowden on July 22, 1997.

10.      Snowden did not allow Plaintiff to return to work for approximately seven days pending resolution of the medical restrictions.  Plaintiff subsequently was involuntarily transferred to the Eldorado station.

11.      During the second week of July, Luther Martinez, a Customer Service supervisor at NVCA Finance Unit, had a conversation with Snowden in which Snowden made what Martinez

considered to be derogatory comments about Plaintiff and Plaintiff's ability to do his job of delivery supervisor. Snowden commented, "if [Plaintiff] can't drive then I don't need him."

12.     On November 26, 1997, Plaintiff received an unacceptable merit evaluation for FY 1997 from his supervisor, Ed Arvizo. In November 1997, Arvizo prepared merit evaluations for Plaintiff and Plaintiff's co-worker, Karen Anaya. Merit pay evaluations are used to provide supervisory personnel with pay increases. In 1997, Arviso was advised by Robert Dinkel, Manager of Customer Service Operations, that merit pay increases would be granted only to employees working at stations having a unit performance of 6.51. Arviso gave Plaintiff and Anaya unacceptable ratings for 1997 because the unit performance at the Eldorado station did not exceed 6.51 on the Pride-in-Excellence ("PIE") chart. The Eldorado station received a PIE rating of 5.24 for fiscal year 1997. Arviso did not request information regarding Plaintiff's job performance from Chavez, Montoya, or Snowden. Arviso only supervised Plaintiff for one and one-half months during fiscal year 1997.

13.     No supervisor who directed Plaintiff during fiscal year 1997 complained to Robert Dinkel about Plaintiff's job performance.

14.     For fiscal year 1997, the supervisory personnel at the Eldorado Station consisted of Karen Anaya, Rebecca Saiz, Steve Roberts, Luther Martinez, and Ed Arviso. Saiz received a "met objectives" evaluation because she worked at the Rio Rancho station for most of 1997, and that station had a 10.27 PIE chart rating. Chavez received a "met objectives" evaluation as part of an administrative settlement. Arviso received a "met objectives" evaluation based on his outstanding performance at the Santa Ana District Post Office in Brea, California. Martinez initially received an unacceptable evaluation for 1997. He subsequently appealed this decision, and received a merit increase for fiscal year 1997.

15.     On December 11, 1997, Plaintiff filed an informal discrimination complaint with the USPS EEO office.

16.     In mid-December, Plaintiff applied for two detail assignments – Senior Personnel/Training Specialist and Labor Relations Specialist.  Eric Martinez, the Albuquerque Postmaster, made the selection for the Labor Relations Specialist assignment and Jim Mercurio, Manager of Human Resources, made the selection for the Senior Personnel/Training Specialist assignment.  Eric Martinez, Ed Arvizo, and Mercurio interviewed Plaintiff for the Labor Relations Specialist detail assignment. Plaintiff was not selected for either detail.

17.     On April 29, 1998, Plaintiff was accused of insubordination, lack of attention, and failure to follow Postal Service Policy regarding the security of stamp stock.  Arvizo, Plaintiff's supervisor, conducted a "fact finding" which concluded that Plaintiff had not been remiss in the performance of his duties.  Plaintiff was not disciplined and did not suffer an adverse personnel action in connection with the April 29 allegations.

18.     On May 12, 1998, Arvizo requested a fact finding involving Plaintiff in connection with charges of gross negligence.  Plaintiff was not disciplined nor suffered an adverse personnel action in connections with the May 12 allegations.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1).  Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

## I.     Preliminary Matters

Before turning to the substance of Plaintiff's discrimination and retaliation complaints, the Court must first consider two preliminary matters regarding what evidence is admissible to support Plaintiff's motion and whether Plaintiff complied with the requirement to exhaust his administrative remedies.

### A. Admissibility of Proffered Evidence

Defendant objects to some of the evidence submitted with Plaintiff's Response to Defendant's Motion for Summary Judgment. In particular, Defendant objects to a sworn letter by Luther Martinez,

on the grounds that it contains statements allegedly made by other Post Office employees which are inadmissible hearsay. The exhibit from Luther Martinez states, *inter alia*, that Snowden made derogatory comments about Plaintiff, and said that if Plaintiff could not drive, Snowden did not need him. Plaintiff also relies on an affidavit by Karen Anaya which includes statements allegedly made by other employees. Anaya's affidavit recounts a meeting she had with Robert Dinkel, Manager of Customer Service Operations, and Eric Martinez, Albuquerque Postmaster. Her affidavit states that Dinkel and Eric Martinez told Anaya to ignore Plaintiff's medical restrictions and to take action to fire him if he refused to do something because of his medical restrictions.

Defendant is correct that inadmissible hearsay evidence should not be considered in a motion for summary judgment. *Jeffries v. State of Kan.*, 147 F.3d 1220, 1224 n.1 (10th Cir. 1998) (citation omitted). However, discriminatory or harassing statements are not hearsay when they are not offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Often such statements are offered to prove that the statements were made as evidence of discriminatory animus. *See Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1249 (6th Cir. 1995): ("The disparaging and racist comments allegedly made by [the supervisors] were not offered to prove the truth of the statements but to demonstrate the racial attitudes of [the supervisors]. Accordingly, the statements are not hearsay."); *Hunter v. Allis-Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1423 (7th Cir.1986) (holding that evidence that a supervisor called blacks "n-----s" was not hearsay when offered in a Title VII action to show the supervisor's racial attitudes); *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1542 (10th Cir. 1995). Further, even if such statements were considered hearsay, they are admissible under the exception for then existing mental or emotional condition, as evidence of the speaker's discriminatory intent. Fed. R. Evid. 803(3); *Talley*, 61 F.3d at 1249-50.

Under this analysis, the Martinez and Anaya exhibits are admissible. They are not being offered to prove the truth of the matter asserted, for example that Plaintiff is not needed by the Post Office if he cannot drive, but rather to show the discriminatory animus and unwillingness to accommodate Plaintiff's disability expressed by Post Office supervisors. As such, the statements are not hearsay. Fed. R. Evid. 801(c). Moreover, if such statements were within the definition of hearsay, they would be admissible under the mental condition exception as evidence of the supervisors' state of mind as unwilling to accommodate Plaintiff's work restrictions. Fed. R. Evid. 803(3).

### B. Administrative Exhaustion / Continuing Violation Theory

Defendant argues that the portion of Plaintiff's discrimination claim which is based on acts that occurred before October 1997 must be dismissed because Plaintiff did not exhaust his administrative remedies for these acts. Federal employees must complain to an Equal Employment Opportunity (EEO) counselor within 45 days of discriminatory conduct to exhaust their administrative remedies. 29 C.F.R. § 1614.105(a). Timely administrative exhaustion is required to bring suit in federal court. *Belhomme v. Widnall*, 127 F.3d 1214, 1216 (10th Cir. 1997).

In the instant case, Plaintiff filed an informal discrimination complaint with his EEO counselor on December 11, 1997. Because the July 1997 acts complained of by Plaintiff occurred more than 45 days before the EEO complaint, Defendant argues they must be dismissed as untimely. Plaintiff counters that the July 1997 acts should be maintained under the continuing violation theory. Discrimination claims outside the statutory period may be maintained if a plaintiff can show that the acts were part of a pattern of continuing discrimination and that one act of discrimination occurred within the filing period. *See Purrington v. University of Utah*, 996 F.2d 1025, 1028 (10th Cir. 1993). In determining whether a continuing violation exists the Tenth Circuit looks to whether: (1) the alleged violations are the same

type of discrimination; (2) the acts are recurring or isolated; and (3) the acts have the degree of permanence that should alert the plaintiff to the need to assert her rights. *Id.* at 1029.

The disputed July 1997 acts consisted of Plaintiff's supervisor Snowden requesting a current list of Plaintiff's medical restrictions though Plaintiff asserts this information was already on file, and subsequently refusing to let Plaintiff work until the list had been supplied. Plaintiff asserts that Snowden's conduct, combined with later acts, constituted a continuing violation. Later discriminatory acts alleged included giving Plaintiff an unacceptable evaluation and denying him detail assignments.

Turning to the three factors adopted by the Tenth Circuit to assess continuing violations, the Court finds that Plaintiff meets the first criteria because both the July 1997 acts and the later acts are alleged to be discrimination based on Plaintiff's disability – epilepsy. Second, the Court looks to whether the acts are recurring or isolated. Here, the alleged acts occurred in July and again in November/December – close enough in time to defeat summary judgment. Third, is the permanency factor – whether Plaintiff should have known at the time that the July 1997 acts were discriminatory. Plaintiff argues that he did not know until he received the Luther Martinez letter describing Snowden's discriminatory animus that Snowden's conduct was based on disability discrimination. Viewing the evidence in the light most favorable to Plaintiff, the Court finds sufficient evidence of a continuing violation to avoid summary judgment on the issue. None of the three factors for assessing continuing violations is determinative. For example, in *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1416 (10th Cir. 1993), the Tenth Circuit found, based on the first two factors, that summary judgment as to the continuing violation theory was inappropriate. In that sexual harassment case, one of the acts outside the statutory limit was a rape. The Court acknowledged that the plaintiff's continuing violation was weakened by the failure to report the rape and other incidents of harassment. *Id.* Under the third permanence prong, such egregious behavior certainly put plaintiff on notice of harassment. However,

the court held that this was not determinative. Similarly, the Court in the instant case finds sufficient evidence of a continuing violation to avoid summary judgment. Plaintiff alleges a pattern of discrimination by several supervisors, pointing to both adverse actions taken against him and specific discriminatory comments made by his supervisors.

## II.    Rehabilitation Act

Plaintiff alleges that Defendant discriminated against him based on his disability in violation of the Rehabilitation Act by transferring him to different station posts involuntarily, failing to accommodate his disability, giving him a negative performance evaluation which resulted in him not getting a merit raise, and not giving him detail assignments for which he applied.

Claims of disability discrimination are reviewed under the analytic framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973). *Hardy v. S.F. Phosphates Limited Company*, 185 F.3d 1076, 1079 (10th Cir. 1999); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). As the Tenth Circuit has explained,

> Under this framework, the plaintiff has the burden of articulating a prima facie case of discrimination. The burden of production then shifts to the employer to articulate a legitimate nondiscriminatory reason for taking the adverse action against the plaintiff. The burden then shifts back to the plaintiff to present evidence such that a reasonable jury could conclude that the proffered nondiscriminatory reason for the employment action is pretextual, that is, unworthy of belief.

*Hardy*, 185 F.3d at 1079-80 (quotation marks and citations omitted); *see also Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir.1999); *Morgan*, 108 F.3d at 1323. "The plaintiff need not present direct evidence of illegal discriminatory animus to survive summary judgment." *Hardy*, 185 F.3d at 1080 (citing *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995)).

In order to establish a *prima facie* case of disability discrimination under the Rehabilitation Act, a plaintiff must demonstrate that: (1) she is a disabled person within the meaning of the Act; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodations; and (3) the employer terminated her employment because of her alleged disability, or she suffered other adverse employment action under circumstances which create an inference that the termination was based on her disability. *Williams v. Widnall*, 79 F.3d 1003, 1005 (10th Cir. 1996); *Woodman v. Runyon*, 132 F.3d 1330, 1337 (10th Cir.1997).

For purposes of the summary judgment motion, Defendant assumes that Plaintiff met the first two prongs of a prima facie disability discrimination case – that he has a disability and is qualified to perform the essential functions of his job. However, Defendant asserts that Plaintiff cannot meet the third requirement of the prima facie case because he cannot show that he has suffered an adverse employment action that was caused by his disability. Further, Defendant contends that it has a legitimate, nondiscriminatory reason for the employment decisions Plaintiff points to as discriminatory, and that the Plaintiff cannot prove that these reasons are pretextual.

To survive summary judgment at the pretext phase, a plaintiff need not prove that the employer's decisions were motivated by discrimination. *Morgan*, 108 F.3d at 1321-22. Rather, the plaintiff's burden is to show that there is a genuine issue of material fact as to whether the proffered reasons were pretextual, that is, not worthy of belief. *Id.* at 1321. Plaintiff can show pretext if there are "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted, non-discriminatory reasons." *Id.* at 1323 (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)). However, the plaintiff's mere conjecture that the employer's reason is pretext for discrimination is

insufficient to avoid summary judgment. *Morgan*, 108 F.3d at 1323. The Court will apply this framework to each allegation in turn.

A. Medical Restrictions

Plaintiff claims that he was discriminated against based on his disability when Snowden requested a current list of Plaintiff's medical restrictions and subsequently refused to let Plaintiff work until the list had been supplied. Defendant asserts that the undisputed facts show that these actions were not disability discrimination. Defendant contends that Plaintiff was at fault for this incident because of his failure to give Snowden the medical information he had in his home. Moreover, Defedants assert that Plaintiff cannot establish his prima facie case because there is no evidence that Snowden's actions were taken because of Plaintiff's disability.

It is true that the ADA envisions an interactive process requiring the participation of both employers and employees. *Templeton v. Neodata Services, Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (citations omitted); *Woodman v. Runyo*n, 132 F.3d 1330, 1344-45, n.15 (10th Cir. 1997). However, the line of cases to which Defendant cites in which courts upheld summary judgment for the employer because the employee failed sufficiently to engage in the interactive process are distinguishable from the case at bar. In *Templeton*, the employee refused to give the employer information that it had never received. Similarly, in the other cases relied upon by Defendant, the employee failed to provide the employer with information that it had never before received. *See, e.g., Steffes v. Stepan Co.*, 144 F.3d 1070, 1072-73 (7th Cir. 1998).

By contrast, in this case Plaintiff submitted to numerous medical examinations and gave Defendant regular documentation about his restrictions. Both parties stipulated that Plaintiff saw at least three doctors between March 1996 and January 1997 who examined him and set work restrictions, including those that Plaintiff stated to Snowden. It is disputed exactly what work restrictions

documentation Defendant had. Defendant agrees that it had at least some of Plaintiff's work restrictions on file. Plaintiff asserts that he had given to several supervisors at the Post Office all of work restrictions set by his doctors, and had updated these on a monthly basis. If, in fact, Plaintiff gave as much documentation as he says he did, a reasonable jury could find it discriminatory or harassing that Snowden demanded that Plaintiff give him additional documentation as to his work restrictions, rather than acquiring them from the Post Office, and that Plaintiff was forced to miss seven days of work until he gave Defendant a new set of documentation. Because Defendants cannot prove as a matter of law that these acts were not discriminatory, and there are material facts in dispute, this is a proper issue to go to the jury.

### B. Merit Evaluation

Plaintiff alleges that his unacceptable merit evaluation for fiscal year 1997 and subsequent denial of a pay increase was part of the disability discrimination from which he suffered at the Post Office. Defendant counters that Plaintiff cannot make out a prima facie case of disability discrimination as to the merit evaluation and that, even if he could, he cannot make a sufficient showing that the Defendant's legitimate, non-discriminatory reason is pretext. Defendants submit evidence that Arvizo, the supervisor who completed Plaintiff's evaluation, gave him an unacceptable evaluation because his station received a low PIE chart rating, and that the other employee who Arvizo evaluated – Anaya – received an unacceptable evaluation for the same reason. Therefore, Defendant contends, it is undisputed that the Post Office had a legitimate, non-discriminatory reason for its decision.

Plaintiff disputes that the evaluation was based on the PIE chart rating. He points to the Martinez and Anaya affidavits as direct evidence of discriminatory animus. Further, Plaintiff contends Defendant's proffered reason is pretext. In support Plaintiff points to the following facts. First, the Postal Service's own documents suggest that performance evaluations are based on individual

performance. The Postal Service employee manual does not indicate that merit evaluations will be based on unit performances, and the evaluation form states the evaluation is based on the employee's individual/personal accomplishments. Second, there is no indication that Plaintiff did not adequately perform his individual duties. When deposed none of Plaintiff's supervisors pointed to specific problems with Plaintiff's performance, looking instead to the PIE chart for the office where he worked. Third, Plaintiff's affidavit stated that though the station where he worked in fiscal year 1996 received a PIE rating below standard, he received a "met objectives" rating for that year. Fourth, Martinez, who initially received an unacceptable rating, subsequently appealed that decision and received a merit pay increase.

This evidence is sufficient to state a prima facie case of disability discrimination as to the merit evaluation. The evidence suggesting that Defendant swayed from the evaluation procedure outlined by the Postal Service and that used in the past is sufficient to raise an inference of discrimination. Next, the burden shifts to the Defendant to offer a legitimate, non-discriminatory reason for its evaluation of Plaintiff. *Morgan*, 108 F.3d at 1323. Defendant has done that – stating that Plaintiff's evaluation was based on his station's unacceptable PIE rating. Third, the burden shifts back to the Plaintiff to show that this reason is pretextual. *Id.* Plaintiff can show pretext by pointing to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason that a reasonable factfinder could rationally find them unbelievable. *Id.* (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996). Viewing the facts in the light most favorable to Plaintiff, the Court finds that a reasonable jury could find Defendants' proffered reason inconsistent and implausible. Plaintiff has introduced evidence of Dinkel's discriminatory animus toward Plaintiff. This same supervisor, Dinkel, instructed Arviso how to conduct Plaintiff's evaluation and rejected Plaintiff's appeal of his unacceptable evaluation. Plaintiff has also offered evidence which calls into doubt Defendant's contention that Postal Service evaluations are based on unit performance rather than individual

performance – including the Postal Service's own documents, Plaintiff's 1996 evaluation which was positive despite a negative unit performance, and Martinez' eventual merit pay increase. For the foregoing reasons, summary judgment as to the merit evaluation is inappropriate.

Defendant argues that the favorable 1997 evaluations of other supervisors at Plaintiff's station are not evidence of discrimination because those supervisors are not "similarly situated." Plaintiff counters that the evaluations of non-disabled supervisors are irrelevant to his discrimination case. Plaintiff is incorrect. Evidence that an employee in a non-protected category was treated more favorably than an employee in a protected category, such as disabled, is frequently used to show pretext. *See* Lindemann and Grossman, *Employment Discrimination Law* 30-35 (3rd Ed. 1996). However, the Court need not reach the issue of whether those supervisors who received favorable 1997 evaluations were similarly situated because it finds that there is sufficient evidence of discrimination in the merit evaluation to have the issue heard by a jury.

C. Detail Assignments

Plaintiff applied for two detail assignments in December 1997 – Senior Personnel/Training Specialist and Labor Relations Specialist – neither of which he received. He charges that these denials were the result of disability discrimination. Defendant offers a legitimate, non-discriminatory reason for the decisions – that Plaintiff interviewed poorly and that the most qualified person was chosen for each position. As described below, Plaintiff contends that Defendant's reasons are pretextual.

1. Labor Relations Specialist Assignment

As to the Labor Relations Specialist assignment, Plaintiff points to his good performance at the interview, his superior qualifications for the assignment, and evidence that Eric Martinez, who made the selection decision, harbored discriminatory animus against him as evidence that the decision was discriminatory. Defendants argue that this is inadequate to prove pretext.

The parties predictably disagree about Plaintiff's interview for the Labor Relations assignment with Defendant stating that he performed poorly and Plaintiff asserting that he interviewed well. Defendant correctly points out that Plaintiff's own assessment of his performance is not reliable evidence, and therefore the Court will not rely on it. *See Bullington v. United Airlines*, 1999 U.S. App. LEXIS 20170, *32 (10th Cir. 1999) (citing *Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir.1999)).

Second, Plaintiff offers evidence that he was more qualified for the assignment than the person chosen – Larry Tiefel, including that: Plaintiff was a higher grade management employee than Tiefel; Plaintiff had worked for the Postal Service for twenty years more than Tiefel; Plaintiff had seventeen years management experience, as compared to Tiefel's three; Plaintiff had a higher level of education than Tiefel; and Plaintiff had previously filled a similar position, whereas Tiefel had not. The letter Plaintiff received from Martinez informing him that he was not selected for the assignment stated that Martinez chose "the best qualified in light of experience and training." Plaintiff challenges this conclusion, asserting that his qualifications were superior to Tiefel's. Plaintiff attempts to show pretext by arguing that his non-selection is implausible and incomprehensible. Defendants counter that much of Plaintiff's supposed qualifications are overstated or irrelevant. For example, though Plaintiff has a Master's Degree, it is in Religion and Christian Ethics, which Defendant asserts is irrelevant for the Labor Relations assignment. Further, while Tiefel had fewer years of management experience, his was much more recent and therefore more relevant than Plaintiff's.

Third, Plaintiff points to Anaya's affidavit as evidence of Martinez' discriminatory animus. The affidavit states that Anaya met with Eric Martinez and Bob Dinkel at the beginning of 1997, soon after she began the position supervising Plaintiff. During the meeting Martinez and Dinkel allegedly acknowledged Plaintiff's medical restrictions, but instructed Anaya to ignore them. Her affidavit states

that Martinez and Dinkel further instructed Anaya to take action to fire Plaintiff if he refused to complete assignments because of his restrictions, and stated that Plaintiff was a non-productive employee.

Defendant argues that the statements in this affidavit should not be considered because they were made almost a year before Martinez' non-selection of Plaintiff for the assignment. Further, relying on *Shorter v. IGC Holdings, Inc.*, 1999 U.S. App. LEXIS 19279, *13-14 (10th Cir.), Defendant argues that Plaintiff cannot show the required nexus between Martinez' discriminatory comments and not selecting him for the assignment. Defendant cites to *Shorter* for the proposition that isolated discriminatory comments, unrelated to the challenged employment decision, are insufficient evidence of discriminatory animus. This proposition is certainly true. However, it is inapposite to the present case.

The United States Supreme Court has explicated the framework a plaintiff should follow in rebutting a non-discriminatory reason offered by a defendant employer. A plaintiff can prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1980) (citing *McDonnell Douglas*, 411 U.S., at 804-05). In *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989), the Supreme Court held that discriminatory remarks are evidence that an impermissible motive played a part in an employment decision. Thus, Martinez' comments evincing an unwillingness to accommodate Plaintiff's disability and a desire to see Plaintiff fired are proper evidence that Martinez denied Plaintiff the Labor Relations assignment because of his disability.

Tenth Circuit case law further elaborates the extent to which discriminatory comments can be used to prove pretext. In determining whether stereotyping, discriminatory comments are sufficient to prove pretext, courts look to whether the comments were made by a decision maker, were directly about the plaintiff, clearly reflect a discriminatory animus, and were made close in time to the adverse

17

employment decision. In *Tomsic v. State Farm Mut. Auto Ins. Co.*, 85 F.3d 1472, 1479 (10th Cir. 1996), a sex discrimination case, the court found that the plaintiff's supervisor's comments exhibiting bias against women were sufficient evidence of pretext to survive summary judgment. The supervisor – Miller – said that "he did not think [the plaintiff] would succeed [and that] her husband made too much money and that she therefore would lack incentive." *Id.* at 1474. To the second plaintiff Miller expressed concern that she was spending too much time on her career and not enough on her family and said that she would have marital problems when she earned more money than her husband. *Id.* at 1475. The comments were made shortly before the decision was made to terminate plaintiffs. The court noted that the comments were made directly to the plaintiffs and that the person who decided to terminate them had before him Miller's recommendation. *Id.* at 1479. These factors, the court held, established "a sufficient nexus to the [adverse employment] decision . . . ; a jury could infer from Miller's remarks in the total context presented that unlawful bias was a motivating factor in defendant's decision." *Id.*

In the instant case there is an even stronger showing of pretext, connecting Martinez' comments to his decision not to select Plaintiff for the Labor Relations assignment. Though more time had elapsed in this case than in *Tomsic* between the biased comments and the employment decision, the other factors supporting pretext are more persuasive in this case. Martinez' comments exhibited bias against Plaintiff because of his disability in that Martinez directed Anaya to ignore Plaintiff's medical restrictions. Further, his remarks showed a desire to see Plaintiff's employment at the Postal Service terminated. The instant case is also stronger than *Tosmic* in proving pretext because Martinez was himself the decision maker as to the detail assignment. Therefore, as in *Tosmic*, there is a sufficient nexus in this case between Martinez' comments and his decision not to select Plaintiff for the assignment that a reasonable jury could find that Defendant's proffered explanation is pretext. Summary judgment is consequently inappropriate as to this claim.

There are cases in which the Tenth Circuit has held that stray discriminatory comments made by non-decision makers are insufficient evidence of discriminatory animus to prove pretext. For example, in *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, (10th Cir. 1994), the Tenth Circuit upheld the district court's granting of summary judgment for the defendant employer in an age discrimination case. The Court held that the stray age-related comments on which the plaintiff relied were insufficient to raise a genuine issue of fact as to pretext. *Id.* at 531-32. Two of the three comments were made by someone who did not participate in the employment decision about which plaintiff complained, and none of the three comments were made specifically about the plaintiff. *Id.* at 531. Further, the court held that one of the comments – "long-term employees have a diminishing return" could apply to employees under the age of forty as well as those over forty. *Id.* Under these circumstances, there was an insufficient showing of pretext to defeat summary judgment. *Cone* is readily distinguishable from the instant case in which the decision maker, Martinez, made the discriminatory comments himself, and those comments were specifically about Plaintiff and Martinez' desire not to accommodate him and to fire him.

The case Defendant relies on, *Shorter*, goes further than *Cone* in granting summary judgment for the employer despite racist comments made by the plaintiff's direct supervisor who was also the decision maker. In *Shorter*, the plaintiff's supervisor made three race-related comments to plaintiff before terminating her and one after the termination. *Shorter*, 1999 U.S. App. LEXIS at *2-3. As in this case, there was a dispute in *Shorter* as to whether plaintiff had sufficiently proved pretext. The defendant employer offered extensive evidence that plaintiff had been fired for inadequate job performance, including numerous complaints by co-workers, supervisors, and clients about Plaintiff's work. *Id.* at 10-11. Plaintiff offered her supervisor's racially biased comments as evidence to prove pretext. The court held that there was no nexus between the comments and the supervisor's decision to terminate plaintiff. *Id.* at *14. Without explaining why, the *Shorter* court held that *Shorter* was more similar to *Hong v.*

*Children's Mem'l Hosp.*, 993 F.2d 1257 (7th Cir. 1993) than to *Tomsic*, 85 F.3d 1472. In *Hong*, the Seventh Circuit held that the supervisor's occasional racial slurs not made by the person who terminated her and which were unrelated to the decisional process was insufficient proof of pretext to survive summary judgment. *Hong*, 993 F.2d at 1266-67. Though the courts in *Shorter* and *Hong* held that the biased comments were not sufficiently connected to the adverse decision, the Court finds in this case as in *Tomsic* there is a sufficient nexus between Martinez' comments and his decision not to select Plaintiff for the detail assignment, for the issue to go to the jury. A jury could reasonably infer given the disparity in qualifications between Plaintiff and the employee selected and Martinez' comments to Anaya about Plaintiff, that Martinez' explanation that he hired the more qualified applicant was pretext for discrimination. Consequently, summary judgment as to the Labor Relations assignment is inappropriate.

### 2. Senior Personnel/Training Specialist Assignment

As to the Senior Personnel/Training Specialist detail assignment, neither party has made concrete legal arguments as to why summary judgment is or is not proper. Rather, the parties rely on finger-pointing, alleging that the other merely makes conclusory statements, instead of meeting their summary judgment burden. Specifically, Defendant argues that Plaintiff cannot prove a nexus between his not receiving the detail position and his disability, and that the selecting official, Mercurio, stated that he selected the most qualified applicants for the position and that Plaintiff's disability did not motivate his decision. Plaintiff asserts that Mercurio did not even interview Plaintiff, that the unacceptable merit rating Plaintiff received infected the decision, and that Mercurio's participation in selection for the Labor Relations assignment further influenced the decision. This, Plaintiff contends, is sufficient to raise an inference of discrimination which Defendants have not rebutted. These sparse, conclusory arguments with few, if any, references to the facts give the Court little to base its decision.

At the summary judgment stage, the plaintiff has the burden of establishing a prima facie case and showing that there is a genuine dispute of material fact as to whether the employer's proffered reason is pretextual. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995) (citing *Ingels v. Thiokol Corp.*, 42 F.ed 616, 622 (10th Cir. 1994)). Plaintiff in this case has failed to meet this burden as to the Senior Personnel/Training Specialist detail assignment. As to the Labor Relations assignment Plaintiff carefully established facts creating a dispute as to who was the most qualified person for the assignment and pointed to evidence of the decisionmaker's discriminatory animus. Regarding this assignment however Plaintiff points to no facts suggesting that he was more qualified than the persons chosen for the assignments and relies on arguments attenuated at best to show that the decision was made under circumstances creating an inference of disability discrimination. Hypothetical reliance on an unacceptable merit rating that may or may not have been discriminatory and the decisionmakers involvement in another selection process which again may have been discriminatory does not create a genuine factual dispute about the reason Plaintiff was not selected for the assignment. While factual disputes must be resolved in favor of the plaintiff, conclusory allegations standing alone are insufficient to defeat a supported motion for summary judgment. *Cone*, 14 F.3d at 530; *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). For the foregoing reasons, summary judgment as to the Senior Personnel/Training Specialist detail assignment will be granted.

## III.     Retaliation

Plaintiff claims that Defendant retaliated against him for filing a discrimination complaint with the EEO by denying him two detail assignments, wrongly accusing him of misconduct in the workplace, and harassing him. Defendant denies that any of these actions were done in retaliation for Plaintiff's EEO complaint.

To state a prima facie case of retaliation, a plaintiff must show (1) a protected employee activity; (2) an adverse action by the employer after the protected activity; and (3) a causal connection between the adverse action and the protected activity. *Morgan*, 108 F.3d at 1324 (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996)). To show the causal connection the plaintiff must present "'evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Corneveaux v. Cuna Mut. Ins. Group*, 76 F.3d 1498, 1507 (10th Cir. 1996) (quoting *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 634 (10th Cir. 1988)). Once plaintiff has stated a prima facie case, the burden of production shifts to the defendant to state a legitimate reason for the adverse action. *Berry*, 74 F.3d at 986. Last, the plaintiff must show that the defendant's offered reason is pretext for retaliation. *Id.*

A. Detail Assignments

Plaintiff contends that he was denied the two detail assignments as retaliation for his EEO complaint. There is no dispute about the first two prongs of Plaintiff's prima facie retaliation case. He engaged in a protected activity by making an EEO complaint, and Defendants do not dispute that being denied the detail assignments is an adverse employment action. However, Defendants contend the Plaintiff has not stated the requisite causal connection between his EEO complaint and not receiving the assignments because both decisionmakers – Arvizo and Martinez – have stated that they did not know about Plaintiff's complaint.

Plaintiff attempts to show a causal connection by pointing to the temporal proximity of his complaint and his nonselection. He argues that the affidavits stating that the decisionmakers did not know of his EEO complaint are self-serving and that a reasonable inference can be drawn that the decisionmakers knew of the complaint. Plaintiff cites no case law for this proposition nor any evidence disputing Arviso and Martinez' claims that they did not know of Plaintiff's complaint. Plaintiff is

concerned that he not be required at the summary judgment stage to prove that his employer knew about the protected activity for which he allegedly suffered retaliation. However, as discussed below, Plaintiff does have the burden of at least creating an *inference* that those persons who initiated the adverse employment actions might have known of the protected activity.

The Tenth Circuit has assumed without deciding that a plaintiff in a retaliation case must show that the employer knew of the protected activity to state a prima facie retaliation case. *See e.g., Anderson*, 861 F.2d at 635; *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993). In several cases, plaintiffs met their burden of creating an inference that the employers knew of the protected activity even when the employers testified that they did not know of the activities. *See Anderson*, 861 F.2d at 635. For example, in *McKenzie v. Atlantic Richfield Co.*, 906 F.Supp. 572, 577 (D.Colo. 1995), the court denied the employer's motion for summary judgment as to the retaliation claim where those who decided the adverse action testified in their depositions that they did not know of the plaintiff's protected activity. The court found, however, sufficient evidence that a reasonable jury could infer the decisionmakers' knowledge where the plaintiff pointed to evidence that the descionmakers had conversations with supervisors who knew of the protected activity and had ample opportunity to learn of the activity. *Id*.

Unlike the plaintiff in *McKenzie*, Plaintiff in the instant case makes no attempt whatsoever to counter Martinez and Arvizo's deposition testimony that they did not know of Plaintiff's EEO complaint. Plaintiff merely argues that it is implausible that they would not know of the complaint. Construing the evidence in the light most favorable to Plaintiff, the Court still finds that Martinez and Arviso did not know of Plaintiff's EEO complaint, and therefore could not have retaliated against him for this protected activity. Accordingly, the Court will grant summary judgment to Defendant on the retaliation claim.

### B. Misconduct Claims and Harassment

Plaintiff's complaint claims that Defendant retaliated against him for his EEO complaint by wrongly accusing him of workplace misconduct and by harassing him in addition to denying him the detail assignments. Defendant moved for summary judgment as to both the misconduct and harassment claims,[2] but Plaintiff's response did not address them. Pursuant to Local Rule 7.5(b), because Plaintiff did not respond to Defendant's brief, Plaintiff is deemed to consent to the granting of the motion as to these grounds for the retaliation cause of action. Accordingly, summary judgment will be granted as to the retaliation claim in its entirety.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment **[Doc. 27]** is hereby GRANTED as to Senior Personnel/Training Specialist detail assignment grounds under the Rehabilitation Act, DENIED as to the remainder of the Rehabilitation Act claim, and GRANTED as to the retaliation claim.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
    Michael Mozes

Attorney for Defendant:
    Michael Hoses

---

[2]Defendant's motion for summary judgment assumes that Plaintiff has brought a separate hostile work environment disability harassment claim though neither the complaint nor the pre-trial report includes such a cause of action. Rather, Plaintiff has claimed that Defendant's pattern of retaliation included harassment.